## SMITH *v.* CITY OF PORTLAND.

[S. C. 35 Pac. 665.]

1. WRIT OF REVIEW— EVIDENCE.— A writ of review does not bring up questions as to the admissibility of evidence, but only questions as to jurisdiction, and as to the correctness of the judgment on the ultimate facts appearing in the record. *Douglas Co. Road Company* v. *Douglas Co.* 6 Or. 303, approved and followed.

2. PUBLIC IMPROVEMENTS— ALTERATION OF CONTRACT.— A committee of a city council, when entering into a contract for the construction of a public improvement with the successful bidder before the council, has no authority to insert in such contract items or terms not in the accepted bid; and the amount of such an item cannot be collected from the property assessed for the improvement.

3. PUBLIC IMPROVEMENTS— EXTRAS AND INCIDENTALS.— In the absence of a provision in the ordinance authorizing a public improvement, or a gen-

eral provision in the city charter, extras or incidentals incurred in making such improvement cannot be charged against the property benefited.

Appeal from Multnomah: E. D. Shattuck, Judge.

This is a special proceeding by Albert T. Smith and others to review the action of the common council of the city of Portland in the matter of assessments for the cost of constructing a sewer. The return to the writ shows that said council, on April twentieth, eighteen hundred and ninety-two, passed an ordinance providing for the time and manner of constructing Portland Heights sewer, establishing a sewer district, authorizing the committee on sewers and drainage to advertise for, receive, and report to the council bids for its construction, to enter into a contract therefor with the accepted bidder, and appointing assessors to estimate and report the cost to be assessed to the several owners of the property in said district. Thereupon the committee advertised for sealed proposals for the work, to be completed in accordance with the plans and specifications therefor, and, in answer thereto, five bids were received, of which the bid of twenty-two thousand five hundred and ninety-seven dollars and fifty cents, made by the American Bridge & Contract Company, was the lowest. The committee made · its report recommending that the contract be awarded to the lowest bidder, which was upon motion adopted by the council, and said committee, on July fifth, in pursuance thereof, entered into a contract with the American Bridge & Contract Company for the construction of said sewer. The specifications provided for concrete where necessary, but, as it was impossible to tell in advance of the excavation for the sewer, that any concrete would be required, no estimate was made thereof by the engineer, and no mention was made of it in the accepted bid; but

when the contract was executed, the committee on sewers and drainage inserted the following item: "For all concrete used per cubic yard, twelve dollars," and under this clause four thousand three hundred and forty-four dollars and twenty cents was assessed upon the property within the sewer district. The assessors appointed to estimate the cost of said sewer made a report of the benefits to be assessed to each tract of land within the district, amounting in the aggregate to twenty-eight thousand three hundred and ten dollars and forty-five cents, which report was adopted by the council, and on December twenty-first, eighteen hundred and ninety-two, an ordinance declaring said assessment, directing the clerk to enter a statement thereof in the docket of city liens, and to publish notice of said assessment was passed. The sewer was completed according to contract, and city warrants amounting to twenty-seven thousand one hundred and sixty-seven dollars and seventy-five cents were, by order of the council, drawn upon the fund to be raised by said assessment, and delivered to the contractor, and an additional charge of one thousand one hundred and forty-two dollars and seventy cents was made for the wages of an overseer in superintending the work. On February fourteenth, eighteen hundred and ninety-three, warrants for the collection of the delinquent sewer assessments were, by resolution of the council, issued and delivered to the chief of police, and, on April third, the plaintiffs, whose property was liable therefor, commenced this proceeding to review the action of the council in relation to that portion of the assessment in excess of the contractor's bid.

The court, at the hearing, made findings upon all the facts in relation to the council's proceedings in the matter of the construction of said sewer, and, among others, the following: "That the committee on sewers and

drainage had no authority to enter into the contract the item 'For all concrete used per cubic yard, twelve dollars,' which amounts to four thousand three hundred and forty-four dollars, and that, in doing so, it exceeded its authority. That there is charged to said property the further sum of one thousand one hundred and forty-two dollars and seventy cents, no part of which was included in said bid nor in said contract, and the common council exceeded its authority in so charging the same to the property benefited by said sewer, and in attempting to collect the same. That the common council exceeded its authority in directing the auditor and clerk of said city to issue warrants for the collection of twenty-eight thousand three hundred and ten dollars and forty-five cents, or for any greater amount than the sum of twenty-two thousand five hundred and seventy-nine dollars and seventy-five cents. That the assessment upon the several tracts or parcels of land owned by the petitioners should be reduced in proportion that twenty-eight thousand three hundred and ten dollars and forty-five cents, the erroneous assessment upon the whole property, bears to what the true assessment should be, to wit, twenty-two thousand five hundred and seventy-nine dollars and seventy-five cents."

The court rendered a judgment against the defendants for the costs and disbursements, and annulled and set aside all the assessment upon the petitioners' property in excess of their proportion of the twenty-two thousand five hundred and seventy-nine dollars and seventy-five cents, from which the defendants appeal.

AFFIRMED.

*Messrs. Jarvis V. Beach,* City Attorney, and *W. H. Adams,* for Appellants.

*Mr. John Catlin,* for Respondents.

Opinion by MR. JUSTICE MOORE.

1.   At the hearing the defendants offered to prove that the plaintiffs, A. T. Smith and others, appeared before the committee on sewers and drainage, and requested it to let the contract for concrete at the price agreed upon, without asking bids therefor, giving as a reason for their request that the season was so far advanced that further delay would postpone the work to their damage.   The court having sustained an objection to this offer, the defendants took an exception to said ruling which was noted and allowed, and this is assigned as error.   "The authorities," says SHATTUCK, J., "fully sustain the position that the writ of review only brings up the record of the inferior court, and that the superior court, upon review, tries the cause only by the record, and only as to questions of jurisdiction, and as to error in proceeding. It will not on review try questions of fact": *Douglas County Road Company* v. *Douglas Co.* 5 Or. 406.   This doctrine was adhered to by the same learned judge, who, in speaking of the rule there adopted, said:   "We adhere to that ruling, and repeat the decision that upon a writ of review under our statute, the superior court will not examine the evidence which was before the inferior court, nor try a new or mere question of fact, but will review the decision of the court below only upon the ultimate facts appearing in the record": *Douglas County Road Company* v. *Douglas Co.* 6 Or. 303.   Courts will not examine the evidence, in such cases, when in the record, to determine whether questions of fact have been properly decided.   It is only when there is an entire absence of proof on some material fact found, that the finding becomes erroneous as a matter of law:   *Hyde* v. *Nelson*, 11 Mich. 353.   If courts will not examine the evidence when in the record, they certainly will not examine it when, as in this case, it is no part thereof.

2.    Appellants contend that the insertion of the price for concrete in the contract was not a judicial, but merely a ministerial, act of the committee, as was also the subsequent ratification thereof by the council, when the sewer was accepted, and warrants drawn and delivered to the contractor for the amount thereof, and therefore not subject to reviews.    The council of a city exercises legislative, executive, and judicial powers.    When an ordinance is passed, it is an exercise of the legislative power; when a contract is entered into in pursuance of an ordinance, it is executing the laws; but when it determines what property should be assessed, and the amount of benefits it has received, it exercises judicial power.    When the council assessed the benefits upon the property within the sewer district, it was an adjudication that the property described in the docket of city liens was liable for the amount assessed, and therefore became a final judgment against it: *People* v. *Supervisors of Livingstone Co.* 43 Barb. 232; *People* v. *Morgan*, 65 Barb. 473; 2 Dillon on Municipal Corporations, § 926, note 3.    To entitle a municipal corporation to recover from an abutter the expense of a local improvement, it must comply with all condition precedent, whether prescribed by charter or ordinance: 2 Dillon on Municipal Corporations, § 811.    Section 4 of ordinance number sixty-four hundred and thirty-nine, entitled "An ordinance to provide for the time and manner of, and the letting of contracts for improving streets and constructing sewers, accepting work, drawing warrants, and making payments therefor," approved December ninth, eighteen hundred and ninety, and in force in said city when said contract was executed, provides that "As soon after the time fixed for receiving bids as practicable, the committee on streets, in case of street improvements, and the committee on sewers and drainage, in case of constructing a sewer, shall open the same, and report

them, together with a summary of the several bids, to the common council. When so reported the common council shall award the contract or contracts, as the case may be, to the lowest and best responsible bidder, or bidders, if, in its judgment, such bid or bids be not unreasonable. All unreasonable bids, or bids for less than all of one class of work chargeable to one block, or that do not conform to the provisions of this ordinance, shall be rejected." When the American Bridge & Contract Company offered to construct the sewer for twenty-two thousand five hundred and ninety-seven dollars and fifty cents, the amount of its bid, and this was accepted by the council, the minds of the contracting parties met and agreed upon the terms, and, in pursuance thereof, the committee was authorized to enter into a contract with said company. This made the members of the committee the agents of the council to execute a mere ministerial duty, and gave them no authority to change its terms, and when they inserted in the contract the item: "For all concrete used, per cubic yard, twelve dollars," they exceeded their authority to that extent, and violated the provisions of section 4 of ordinance number sixty-four hundred and thirty-nine, by letting the contract without any bid for concrete. This is not a proceeding between the city and the contractor, but is one between it and the property owners affected by the assessment, and, as to them, it was not in the power of the council, under its ordinances, to make a contract that would bind their property for the payment of concrete, without a bid therefor; and hence no ratification by the council could bring into existence a power it did not possess in the first instance: 1 Dillon on Municipal Corporations, § 463; *Doughty* v. *Hope*, 3 Denio, 594; *In re Turfler*, 44 Barb. 46.

3. The appellants also contend that the employment of an overseer to superintend the construction of the sewer

was necessary, and that a reasonable amount paid one for that service was properly chargeable to the property. Section 121 of the city charter provides that "The council shall have power to lay down all necessary sewers and drains, and cause the same to be assessed on the property directly benefited by such drain or sewer; * * * and when the council shall direct the same to be assessed on the property directly benefited, such expense shall, in every other respect, be assessed and collected in the same manner as is provided in the case of street improvements." The published notice of intention to construct said sewer described its location and informed parties interested that the council proposed " to designate and describe the district benefited thereby, and to assess the property within said district the necessary expense of building such sewer in accordance with the provisions of section 121 of the charter of the city of Portland." Section 3 of the ordinance authorizing its construction, passed in pursuance of said notice, provides that "said sewer, together with all manholes, catchbasins, and branches connected therewith, shall be paid for by the property benefited by the construction of said sewer, as provided by section 121 of the city charter of Portland." The charter nowhere directly provides that incidental expenses, not embraced within the actual cost of a local improvement, shall be chargeable to the property benefited. The notice of intention to construct said sewer might be construed to include such expenses, but the ordinance passed in pursuance thereof made no provision therefor. The authority under the charter to make local improvements is exercised by ordinance, which must with reasonable certainty prescribe a rule that will fully guide those who are to execute it, and give to those interested fair notice of how, and to what extent, it is to operate: Elliott on Roads and Streets,

382. The ordinance in question does not provide that the incidental expenses of the construction of the sewer shall be chargeable to the property within the district, nor could it give to the owners fair, or any, notice that their property would be burdened by such expenses. The enumeration of manholes, catchbasins, and branches connected therewith would seem to exclude all other expenses under the maxim: "*Expressio unius est exclusio alterius.*" The assessment of benefits in excess of the contractor's bid having been made without authority, the judgment is affirmed.                               AFFIRMED.

[Decided January 29, 1894; rehearing denied.]